# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 18-mj-101 (GMH) |
| JULIAN PHILIP BLANCHARD, | Chief Judge Beryl A. Howell |
| Defendant. | |

## MEMORANDUM OPINION

The defendant, Julian Philip Blanchard, has been charged by criminal complaint, with Distribution of Child Pornography through Interstate Commerce, in violation of 18 U.S.C. § 2252(a)(2). Crim. Compl. at 1, ECF No. 1. Following the defendant's arrest, on August 29, 2018, in his home state of Louisiana, the government's motion for pretrial detention was denied by a Magistrate Judge in the Middle District of Louisiana at a detention hearing held on September 4, 2018. The order for pretrial release of the defendant to the third-party custody of his parents, and other conditions, was stayed by this Court, pursuant to 18 U.S.C. § 3145(a), *see* Order Granting Gov't's Emergency Mot. Stay Execution of Release Order, ECF No. 6, and the defendant was ordered transported to this District, *see* Order Granting Gov't's Mot. Transport of Def., ECF No. 9. Thereafter, based upon the evidence presented and proffered by the parties at a detention hearing, on October 9 and 12, 2018, before this Court, the government's motion to detain the defendant was granted. *See* Min. Entry (Oct. 12, 2018). This Memorandum Opinion sets out the findings and reasons for detention. *See* 18 U.S.C. § 3142(i)(1) (requiring that a detention order "include written findings of fact and a written statement of the reasons for the detention"); *see also United States v. Nwokoro*, 651 F.3d 108, 109 (D.C. Cir. 2011) (noting that the Bail Reform Act requires pretrial detention order be supported by "a clear and legally

1

sufficient basis for the court's determination" in written findings of fact and a written statement of the reasons for the detention or in "the transcription of a detention hearing" (quoting *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988))) (per curiam).

I.  **BACKGROUND AND FINDINGS**

At the detention hearing, the government presented the testimony of Federal Bureau of Investigation ("FBI") Special Agent Christopher Ford, who re-affirmed the allegations in the criminal complaint, and proffered additional evidence in support of the government's detention motion. In particular, as detailed in the criminal complaint, on July 6, 2018, the defendant, using the username "jayrock985," initiated contact with a D.C. Metropolitan Police Department detective ("UC"), who was acting undercover as part of the MPD-FBI Child Exploitation Task Force operating out of a local office in Washington, D.C. Crim. Compl., Statement of Facts ("SOF"), at 1, ECF No. 1-1.[1] The defendant contacted the UC at a KIK account that the UC had posted on an anonymous website along with a message soliciting contact with persons interested in incest and "watching really yng today." *Id.* KIK is a free instant messaging mobile application that supports the transmission and receipt of multi-media content between individual users and in group chat rooms. *Id.* at 1 n.1. Between July 6 and July 10, 2018, the defendant engaged in private KIK chats with the UC, in the course of which the defendant sent to the UC: (1) a link to a site with dozens of files of child erotica, *id.* at 2; and (2) three videos of child pornography showing an infant, a toddler and prepubescent girl being sexually abused, respectively, *id.* at 3, 4.

---

[1] The FBI was able to confirm the defendant's identity as the KIK user "jayrock985." SOF at 6. The defendant has not disputed his identification as the person communicating with the UC.

On July 6, 2018, while also chatting privately on KIK with the UC, the defendant invited the UC to a private KIK group called "Pedos Only," where users were trading child pornography. *Id*. at 3. Several days later, on July 9, 2018, the defendant posted to the Pedos Only site, the same child pornography video showing the toddler previously sent to the UC, *id*. at 5, and, on July 11 and 12, 2018, the defendant invited three other users to this same private KIK chat. *Id.* The other users of the Pedos Only site distributed a combination of links to and/or images of child pornography to other users of the site. *Id*.

At the time of the defendant's arrest, he was in possession of various electronic devices, including an iPhoneX and a Nokia cell phone. Forensic examination revealed that the iPhone X had at some time had the KIK application installed, but it had been removed, and the Nokia cell phone, which had been used between 2013 and 2015, contained about 36 stored child pornography images.

At the detention hearing, the government provided documentation, in Gov't's Ex. 2, regarding the defendant's prior conviction in March 2009 for cyberstalking in the Parish of Tangipahoa, Louisiana, stemming from an undercover police investigation, in which undercover officers posed as juvenile girls in Yahoo chatrooms. According to the police report, dated October 4, 2006, incorporated in Gov't's Ex. 2, in September 2006, the defendant engaged in online explicit sexual conversations with an undercover officer, who was posing as a 15-year old girl, during which conversations the defendant used a webcam to show himself masturbating and arranged to meet the girl to have sexual relations. Gov't's Ex. 2. The defendant was arrested at the location he had arranged for that meeting, in possession of a box of condoms. *Id.* Review of the defendant's Yahoo account showed that he "has several underage girls that he chats with" and the defendant "also admitted to having child pornography on his computer." *Id.*

## II. LEGAL STANDARD

The Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*, provides that "a person awaiting trial on a federal offense may either be released on personal recognizance or bond, conditionally released, or detained," and "establishes procedures for each form of release, as well as for temporary and pretrial detention." *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) (citing 18 U.S.C. § 3142(a)). The court is required, under 18 U.S.C. § 3142(f)(1), to hold a pretrial detention hearing, upon the government's motion for detention, before releasing any defendant charged with certain serious crimes, including "a crime of violence," which is defined to include "any felony under chapter…110." 18 U.S.C. § 3156(a)(4)(C). A judicial officer "shall order" a defendant's detention before trial, *id.* § 3142(e)(1), if, after the detention hearing held under Section 3142(f), and consideration of "the available information concerning" enumerated factors, *id.* § 3142(g), "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," *id.* § 3142(e)(1). The facts used to support this finding "shall be supported by clear and convincing evidence." *Id.* § 3142(f). Even if the defendant does not pose a flight risk, danger to the community alone is sufficient reason to order pretrial detention. *United States v. Salerno*, 481 U.S. 739, 755 (1987).

When a defendant is charged with enumerated offenses described in Sections 3142(e)(2), (e)(3) and (f)(1), "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed" such an offense. 18 U.S.C. § 3142(e)(3). Once a rebuttable presumption is triggered, the defendant bears the burden of production "to offer some credible evidence contrary to the statutory presumption," *United States v. Alatishe*, 768 F.2d 364, 371

4

(D.C. Cir. 1985), while the ultimate burden of persuasion remains with the government, *see United States v. Hir,* 517 F.3d 1081, 1086 (9th Cir. 2008); *see also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003) ("In a presumption case such as this, a defendant bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight." (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)); *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (noting that the burden remains with the government to persuade the court that the defendant is a danger or poses a risk of non-appearance). The defendant is not required to rebut the presumption that the criminal activity is dangerous, or even to rebut the judicial finding as to probable cause, but only to "meet[] a 'burden of production' by coming forward with some evidence that he will not flee or endanger the community if released." *Dominguez*, 783 F.2d at 707.

The judicial officer considering the propriety of pretrial detention must consider four factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence,…or involves a minor victim. . .;
> (2) the weight of evidence against the person;
> (3) the history and characteristics of the person, including . . . the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and . . . whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). At the detention hearing, both the government and the defendant may offer evidence or proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1209–10 (D.C. Cir. 1996).

The standard of review for review of a magistrate judge's order for release is *de novo*, and a district judge conducting that review must "promptly," 18 U.S.C. § 3145(a), make an independent determination whether conditions of release exist that will reasonably assure the defendant's appearance in court or the safety of any other person or the community, pursuant to Section 3142(e)(1). *See* 28 U.S.C. § 636(a)(2) (authorizing magistrate judges to "issue orders pursuant to section 3142 of title 18 concerning release or detention of persons pending trial"); *id*. § 636(b)(4) (directing "[e]ach district court shall establish rules pursuant to which magistrate judges shall discharge their duties"); D.D.C. CRIM. R. 59.3(a) & (b) (providing that a magistrate judge's order issued "in a criminal matter not assigned to a district judge" and "for which review is requested in accordance with this Rule may be accepted, modified, set aside, or recommitted to the magistrate judge with instructions, after de novo review by the Chief Judge."); *see also United States v. Henry*, 280 F. Supp. 3d 125, 128 (D.D.C. 2017) ("The Court reviews *de novo* whether there are conditions of release that will reasonably assure the safety of any other person and the community."); *United States v. Hunt*, 240 F. Supp. 3d 128, 132–33 (D.D.C. 2017) (noting that "although the D.C. Circuit has not yet addressed the issue, the many circuits that have agree that the district judge should review *de novo* a detention decision rendered by a Magistrate Judge") (collecting cases). "The Court is free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons." *United States v. Hubbard*, 962 F. Supp. 2d 212, 215 (D.D.C. 2013) (quoting *United States v. Sheffield*, 799 F. Supp. 2d 18, 20 (D.D.C. 2011)).

### III. DISCUSSION

In this case, the defendant has not been indicted but, to date, charged only in a criminal complaint with distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2). Upon a

finding of probable cause to believe the defendant committed the charged offense, this is a type of offense that triggers the rebuttable presumption under Section 3142(e)(3)(E), as "an offense involving a minor victim under section…2252(a)(2)." In evaluating probable cause, courts use a "flexible, common-sense standard," *Florida v. Harris*, 568 U.S. 237, 240 (2013) (quoting *Illinois v. Gates*, 462 U.S. 213, 239 (1983)), requiring consideration of the "totality of the circumstances," *id.* at 244. As the Supreme Court recently emphasized, "[p]robable cause 'turn[s] on the assessment of probabilities in particular factual contexts' and cannot be 'reduced to a neat set of legal rules.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *Gates*, 462 U. S. at 232). A showing of probable cause "is not a high bar" and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* at 586 (quoting *Gates*, 462 U.S. at 243 n. 13),

      Based on the evidence presented and proffered at the hearing, and the entire record, as summarized in Part I, *supra*, the Court finds "a substantial chance" exists that the defendant committed the child pornography distribution crime alleged in the criminal complaint. In brief, the defendant initiated contact with the UC, then engaged in online private message asking questions about the UC's purported 6-year old daughter and sent the UC directly a link to child erotica files, as well as child pornography images and videos. In addition, the defendant invited the UC to join a private KIK group, where members, including the defendant, posted and made available child pornography to each other. Finally, at the time of his arrest, the defendant possessed one cell phone on which the KIK application had been installed and another cell phone containing 36 child pornography images. Accordingly, in light of the finding of probable cause to believe that the defendant committed the charged offense, the rebuttable presumption under Section 3142(e)(3)(E) is triggered here.

The next task is determining whether the defendant has rebutted the presumption of pretrial detention by showing any condition or combination of conditions of release that will reasonably assure the appearance of the defendant as required and the safety of any other person and the community. In this regard, the defendant urges that he be released to the custody of his father with electronic monitoring and no Internet access. Rough Transcript of Hearing (October 12, 2018) at 16:2–10. The sufficiency of these proposed release conditions is addressed as part of consideration of the four factors, under 18 U.S.C. § 3142(g). On the current record, these factors militate strongly in favor of pretrial detention.

### 1. Nature and Circumstances of the Charged Offense

The first factor, the nature and circumstances of the charged offense, favors detention, since the charged offense is extremely serious as it involves the distribution of child pornography depicting the sexual abuse of minor victims, including in this case toddlers and infants, to the UC as well as multiple individuals who were members of a KIK online chat group. Child pornography depicts pictorial evidence of physical sex abuse against and exploitation of children and the production and distribution of such contraband carries a multitude of harms. Child pornography victims "are harmed initially during the production of images, and the perpetual nature of child pornography distribution on the Internet causes significant additional harm to victims," and "live with persistent concern over who has seen images of their sexual abuse" and how those images are being used to cause additional harm. U.S. SENT'G COMM'N, FEDERAL CHILD PORNOGRAPHY OFFENSES (Dec. 2012) at vii (available at https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf). Child pornography is used to "groom" other underage victims to engage in sexual acts and, when shared in online child pornography groups that essentially form communities, "validates and

normalizes the sexual abuse of children" and "contribute[s] to the further production of child pornography and, in the process, to the sexual abuse of children." *Id.* As Congress found in enacting the Child Pornography Prevention Act of 1996, "the existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children." Pub. L. No. 104-208, § 121, 110 Stat. 3009 (codified at 18 U.S.C. § 2251). Reflecting the seriousness of this charge, a violation of Section 2252(a)(2) carries a minimum term of imprisonment of five years. *See* 18 U.S.C. § 2252(b)(1).

The facts alleged by the government present a disturbing case of distribution of child pornography in an online "community" in which the defendant invited and encouraged other users to participate and distribute child pornography. To minimize the risks of further harm, the defendant proposed, and the magistrate judge imposed, as release conditions that the defendant reside with his father, that he not possess electronic devices, that the father password protect the father's own electronic devices, and that the defendant be restricted to the Eastern District of Louisiana, where his father resides. Order Setting Conditions of Release at 2, ECF No. 11. These conditions were intended to restrict the defendant's access to the Internet, to mitigate the risk of further harm to children, including his own, through the distribution of child pornography or other sexual abuse or exploitation of children.

These release conditions are simply insufficient for several reasons. First, monitoring compliance with the release conditions would be difficult. Indeed, the defendant possessed at the time of his arrest multiple electronic devices, including a cell phone used over three years ago, from 2013 to 2015. Second, even if the defendant does not technically "possess" any electronic devices, given the plethora of ways to obtain online access at libraries and other public facilities, the defendant may remain free within the restricted area to access the Internet. Finally, the

defendant may also be able to access any weakly protected devices held by the defendant's father. Thus, the risk of re-offending looms large. In light of the dangerousness to the most vulnerable members in our society—children—the proposed release conditions fall short of providing reasonable assurances for the safety the community.

### 2. The Weight of the Evidence

The weight of the government's evidence against defendant is very strong. The government supports the child pornography distribution charge with the defendant's own communications with an undercover officer, the child pornography videos and images the defendant sent directly to the UC and also uploaded to an KIK chat group with the provocative name "Pedos Only," as well as the defendant's invitations to online KIK users to join the "Pedos Only" group. In addition, although a complete forensic analysis of the electronic devices recovered from the defendant at the time of his arrest is not yet complete, that analysis has so far found 36 child pornography images stored on the defendant's Nokia phone and confirmed that the KIK application, which was used to communicate with the UC and the Pedos Only KIK site, had been installed on the defendant's iPhoneX. Therefore, the ample weight of the evidence favors detention.

### 3. The History and Characteristics of the Defendant

As to the third factor requiring consideration of the defendant's history and characteristics, the defendant's communications with the UC reflect his interest in child pornography and incest, since the UC message that prompted the defendant to initiate contact with the UC read "Incest dad at home with niece and daughter today…any other dads in the same boat? Or any others watching really yng today?" SOF at 1. In their first conversation, the defendant identified himself as a dad and asked the UC for "Pics?" of the UC's purported

daughter. *Id*. at 3. During the subsequent conversations with the UC, as noted, the defendant sent child pornography images and videos. In this context, the fact that the defendant is a father to two small children raises significant concern. Although the magistrate judge imposed release conditions that would remove the defendant from his residence, the order is not clear that the defendant would be required to stay away from his children without supervision. Even if that stay-away restriction were clearly imposed, enforcing that restriction may pose significant challenges since the defendant's third-party custodian would be none other than his children's grandfather.

In any event, the most troubling aspect of the defendant's background is his criminal history of engaging and attempting to engage in analogous criminal sexual conduct with minor juveniles, with whom he communicated online. Specifically, according to the police description of the conduct underlying the defendant's 2009 cyberstalking conviction, the defendant communicated with a person he believed to be, and with actual, underage girls in online chats, including with webcam sessions involving sexual conduct. The defendant was arrested in 2006 when he drove for over two hours with the plan to have physical sexual relations with a person he believed to be an underage girl. Gov't's Ex. 2. This criminal conduct in 2006, resulting in a criminal conviction in 2009, is compounded by the fact that the defendant possessed 36 child pornography images on a cell phone used between 2013 and 2015. This course of conduct over the past twelve years leaves the Court with no confidence that defendant will not re-offend were he released.

### 4. The Danger to the Community

The fourth factor, the danger to the community posed by defendant, also weighs in favor of detention since the nature of the crime charged—distribution of child pornography—weighs

11

heavily against release. As discussed in Part III.1, *supra*, the distribution and possession of child pornography constitutes a danger to the community, resulting in physical and mental harm to the children depicted, normalizing such conduct among those sharing this contraband, and creating a market for such contraband, and thereby encouraging the victimization of more children. These significant harms and dangers animated the Congress to create the statutory presumption of detention in these cases. For the aforementioned reasons, the Court believes that the defendant presents a significant danger to the community and, given the risks posed, finds that no condition or combination of conditions will reasonably keep the community safe were the defendant to be released.

## IV. CONCLUSION

For the foregoing reasons, upon consideration evidence proffered and presented at the detention hearing, the factors set forth in 18 U.S.C. § 3142(g), and the possible release conditions set forth in Section 3142(c), the Court finds clear and convincing evidence that defendant's pretrial release would constitute an unreasonable danger to the community, and that no condition or combination of conditions can be imposed that would reasonably ensure the safety of the community were he to be released pending trial. Defendant has failed to rebut the presumption in favor of pretrial detention required by Section 3142(e)(3)(E).

Accordingly, the government's motion for continued detention is granted and the defendant shall remain in the custody of the Attorney General for confinement pending a final disposition in this case. An order consistent with this Memorandum Opinion and in accord with 18 U.S.C. § 3142(i), will be entered contemporaneously.

Date: October 15, 2018

>
> _____
> **BERYL A. HOWELL**
> Chief Judge